CHICAGO & ALTON RAILROAD COMPANY

v.

JULIA F. ARNOL.

*Railroads—Negligence—Personal Injuries — Passenger on Freight Train—Injury from Jerking a Train—Duty of Defendant to Use Reasonable Care—Measure of Damages—Weight of Evidence—Instructions—Evidence—Pleading*

1.  In an action brought to recover for a personal injury received by plaintiff while a passenger on a freight train of defendants, through the sudden starting and jerking of the train after it had stopped, as plaintiff supposed for passengers to alight, whereby she was thrown down upon the floor of the car, *held*, that the evidence justified the jury in finding that the defendant's engineer was guilty of negligence; that the plaintiff was free from contributory negligence, and that plaintiff had suffered serious injury.

2.  Different witnesses were properly permitted to testify why they took the train in question, to wit, because there was no other train at that time, how the jerking of the train in question compared with what was usual on freight trains, and whether in witness' (not a medical witness)

opinion plaintiff had been in physical condition to do her usual work since the accident.

3. If a railroad company carries passengers on a freight train it is bound to use reasonable care in handling the train so that the passengers may be protected from injury.

[Opinion filed April 11, 1892.]

Appeal from the Circuit Court of McLean County; the Hon. O. T. Reeves, Judge, presiding.

Messrs. Williams & Capen and William Brown, for appellant.

Messrs. Benjamin & Morrissey and W. B. Carlock, for appellee.

Mr. Justice Wall. Appellee recovered a judgment in the Circuit Court of McLean County against the appellant for $2,500. The alleged ground of action was the negligence of employes of the company in the management of a freight train upon which appellee was riding as a passenger. This train, designated as No. 14, was accustomed to carry passengers from Bloomington to points south on the line of the road. On the 2d of August, 1890, appellee took passage at Bloomington for Shirley. As the train reached the latter station another train headed north was standing on the main track, and it therefore went in on the siding or switch. It passed along the siding until the engine reached the south end thereof, where it again entered upon the main track and finally came to a stop, the caboose then being at a point opposite or a little south of the station platform. But before making this stop it made a short stop a short distance north and there abruptly started forward. Just where the first halt was made, and just how long it was can not be very certainly fixed by the evidence; but it seems quite probable the caboose was then but a little north of a point opposite the station platform, and not very far from the place where passengers were in the habit of getting

off this train, and it is also quite probable the stop, though very brief, was long enough to induce passengers to suppose it was intended for the final stop, and that it was proper for them to alight there. The plaintiff so understanding arose from her seat, and as she was in the act of doing so the caboose was suddenly and violently moved forward, throwing her upon the floor of the car. She was rendered unconscious for a few moments. Other passengers went to her aid, finally getting her out of the car and over to the platform, where after a short time she recovered sufficiently to be able to walk home with some assistance.

She claims that she has suffered greatly ever since, and has not only been confined to her bed for a considerable period but has sustained substantial pecuniary loss, because prevented from following the occupation of washing, by which she had been accustomed to earn an average of three dollars per week. She insists that her pain and physical ailments, which she describes as very serious, are all due to the injury thus received. The evidence on the part of appellee quite clearly shows that her fall was caused by a quick and unusual jerk of the car she was in, and that there were a number of other such jerks. From this testimony the jury would be justified in believing that the train was handled very carelessly and that the jerking was very unusual in character. So strong is the testimony on this point that it is enough to establish the charge of negligence in this respect. It is, however, met by the evidence of the train men and other witnesses, to the effect that due care was used; that the jerking was not unusual and was no more than might ordinarily be expected in case of a long and heavy train as this one was. The jury have settled this conflict in the evidence and we are not prepared to say they erred in the conclusion they reached. It seems hardly reasonable that such sudden and violent movements of the car as the evidence discloses were occasioned by ordinarily careful action on the part of the engineer. It is by no means difficult to reconcile the verdict with the evidence on this branch of the case.

Perhaps a more difficult question is whether, under the circumstances, the momentary halt was properly construed by the plaintiff as an intimation that she might safely alight from the car and whether she exercised proper care in arising and starting out at that time. The train was on a siding, and the caboose had reached about the usual stopping place. She says the brakeman had called the station, but whether so or not, she was familiar with the place and knew that the train had reached it. The brakeman and another witness say that he called out to the passengers to keep their seats, that the stopping place had not been reached, but the jury probably concluded this was done, if at all, as the train was again starting forward, and when by the sudden jerking movements the passengers, some of whom like the plaintiff, had arisen, and some still seated, were in considerable confusion. At any rate the final stopping place was but a short distance, only a few rods, south of the first. We are not inclined to say that there was any sufficient reason for the jury to find that in thus arising she was guilty of a want of ordinary care, and in view of all the testimony there is no just ground for interference with the verdict in this respect.

As to the measure of damages the jury were met by conflicting testimony. There was medical evidence, not harmonious, and there was the evidence of the friends and neighbors of the plaintiff, not all harmonious. It was apparent her health was considerably impaired from some cause. The extent of the impairment was somewhat a matter of dispute, and whether it was wholly or even partly due to the injury. After carefully considering the evidence we are not impressed very strongly either way, but are disposed to think the statement of the plaintiff may be somewhat overdrawn; honestly perhaps, as she was evidently suffering from a depression of the nervous system which would lead her to exaggerate her symptoms. Yet, it is more than probable she was still affected by the consequences of her fall, and it was for the jury to fix the proper compensation. We can not by the mere perusal of the

written testimony obtain so just a view of this part of the case, or of any part indeed, but especially of this, as if we had seen the living witness, the plaintiff as well as the others. It may have been quite apparent to the jury, enjoying this advantage, that the injuries were not exaggerated and that the sum allowed was entirely within the bounds of reason.

Several objections are urged as to the action of the court in admitting evidence:

1st. In allowing a witness to state why he took the train in question; that is, because no other train was going in that direction at that time of the day. We see no error in this. It is a matter of common occurrence that a railroad company will permit travel on certain of its freight trains between certain points on its line, because according to its schedule of passenger trains the wants of the public are not fully met on those parts of the road by the regular passenger train service, and it was so in this instance. The company permitted this train to be so used. The proof was proper for the purpose of showing that the train was habitually so patronized, because of its convenience, in the absence of any other, and as tending to show that it was a part of the regular service of this train.

2d. A witness was permitted to state how the jerking on this occasion compared with what was usual on freight trains. This was proper to meet the position likely to be taken by the defense that there was no more jerking than was necessary in handling such trains and as tending to throw light on the question of negligence in that regard.

3d. A witness was allowed to state whether in his opinion the plaintiff had been in a physical condition to do her usual work since the accident. The witness was not a medical expert; but the matter was one of ordinary observation and the answer called for involved merely the result of what he had noticed as to her apparent bodily health. It is settled in this State that any person may give his opinion even as to the mental condition of another, though

he is not a medical expert.    There was no error in this ruling.

It is urged that in the second and third instructions, given at the plaintiff's instance, there was no reference to the circumstances and conditions of this particular train to be considered in determining the question of negligence.    If this was necessary the want was fully supplied and supplemented in several instructions given on behalf of the defendant.    Nor do we think the special objection taken to the second instruction, as to the want of evidence upon which to support it, is of sufficient importance to justify reversing the judgment.    The clause referred to was, indeed, not pertinent in view of the case as made by the proof, if it could be considered as referring to the final stop, but we can not think it misled the jury, or that the omission of the whole instruction would have made any difference in the result.    And in this connection we may consider the refusal of instructions numbered 10, 11, 12 and 13, asked by the defendant.    It is true, certain of the counts were framed upon the theory that the train was not stopped a sufficient length of time to enable the plaintiff to alight in safety, and it is also true that the final stop was ample for the purpose, but the contention of plaintiff upon the evidence was that the first stop, which she claimed she had a right to suppose was the stop intended for the benefit of passengers, was not long enough.

This was the real matter in dispute.    The jury must have so understood it and there was no controversy about the final stop.    It was the first stop to which the plaintiff's complaint referred.    Hence there was no substantial error in refusing these instructions, which were to the effect that no case had been proved under those counts.    But if these counts when technically considered, were faulty in not accurately stating the case as made by the proofs, yet we think no harm was possibly done by this action of the court, since in other counts the real position of the plaintiff, and upon which she based her right to a recovery, was clearly and definitely set forth.

The ninth instruction was properly refused because it

ignored the real ground of the plaintiff's contention, and assumed there was no liability if the final stop was of sufficient length regardless of what had preceded.    All that was material in the sixth was given in others, especially the seventeenth.    The modification of the fifteenth is complained of; as modified and given, it reads as follows:

"If you believe from the evidence that the ordinary manner of stopping a freight train, *with reasonable care*, produces on the rear car a considerable jerk, jolt or jar, at the time the train stops, then that is one of the dangers in traveling upon a freight train that the passenger should use reasonable care to avoid; and if you believe from the evidence that the plaintiff did not take reasonable care to avoid the consequences of such jerk, jolt or jar in stopping the train, and thereby came to her injury, you should find the defendant not guilty."

The modification consisted of adding the words, " with reasonable care."    We perceive no valid objection.    If the company carried passengers by this train it was certainly bound to use reasonable care in handling the train, and the plaintiff had the right to expect as much.    Hence, if she was reasonably careful in view of that duty of the defendant, she was as careful as the law required.    We do not think it a sound view that where passengers are habitually carried on a freight train, as was done in this instance, the company can ignore the fact that its passengers are liable to be injured by careless handling of the train.

When the train carries freight merely, which will not be injured by sudden jerks or stops, it may omit care which would be necessary if there are passengers.    By taking the passengers it assumes the duty of using, at least, reasonable care for their safety.

Upon the whole record we find no substantial error, and the judgment will therefore be affirmed.

*Judgment affirmed.*